UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-02487 JGB (SPx)** | Date | July 17, 2018 |
|---|---|---|---|
| Title | *Robert Brown, et al. v. Perris Park Apartments Partnership* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 37); (2) DENYING Defendant's Motion to Strike Portions of Plaintiffs' First Amended Complaint Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure (Dkt. No. 38); and (3) DENYING Defendant's Request for Judicial Notice (Dkt. No. 38-1) (IN CHAMBERS)

    Two motions are before the Court. On May 11, 2018, Defendant Perris Park Apartments ("Defendant") filed a Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ("MTD," Dkt. No. 37.) Plaintiffs Robert Brown, Latasha Brown, Elijah Brown, a minor by and through his general guardian Robert Brown, Esiah Brown, a minor by and through his general guardian Latasha Brown, Arnice Mingo, Edwin Gaines, Sierra Gaines, a minor by and through her general guardian Arnice Mingo, Ta'Liyah Mingo, a minor by and through her general guardian Arnice Mingo, Sire Gaines, a minor by and through her general guardian Arnice Mingo, Roberta Robbins, and Fair Housing Council of Riverside County ("FHC") (collectively, "Plaintiffs") filed an opposition on June 11, 2018. ("MTD Opposition," Dkt. No. 39.) Defendant filed a reply on June 18, 2018.[1] ("MTD Reply," Dkt. No. 43.) Additionally, on May 11, 2018, Defendant filed a Motion to Strike

---

[1] Defendant's MTD Reply is nineteen pages. As outlined in the Court's Standing Order, replies should not exceed twelve pages. (Dkt. No. 8 ¶ 9(b).) The Court warns Defendant to adhere to the Court's Standing Order. Further violations may result in sanctions.

Portions of Plaintiffs' First Amended Complaint Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  ("MTS," Dkt. No. 38.)  Defendant also filed a Request for Judicial Notice to accompany their MTS.  ("RJN," Dkt. No. 38-1.)  Plaintiffs filed an opposition on June 11, 2018. ("MTS Opposition," Dkt. No. 40.)  Defendant filed a reply on June 18, 2018. ("MTS Reply," Dkt. No. 43.)  The Court took these matters under submission on June 28, 2018. (Dkt. No. 44.) Upon consideration of the papers filed in support of and in opposition to these motions, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's MTD, DENIES Defendant's MTS, and DENIES Defendant's RJN.

## I.   BACKGROUND

On December 13, 2017, Plaintiffs filed a Complaint against Defendant containing four causes of action: (1) violation of the Fair Housing Amendments Act ("FHAA"); (2) violation of the California Fair Employment and Housing Act ("FEHA"); (3) breach of warranty of habitability; and (4) negligence.  ("Complaint," Dkt. No. 1.)  On February 12, 2018, Defendant filed a Motion to Strike Plaintiffs' Complaint (Dkt. No. 10) and a Motion to Dismiss (Dkt. No. 11).  On March 22, 2108, the Court denied Defendant's Motion to Strike, granted Defendant's Motion to Dismiss, and granted Plaintiffs leave to amend their Complaint.  ("March Order," Dkt. No. 21.)  On April 27, 2018, Plaintiffs filed a First Amended Complaint containing the same four causes of action.  ("FAC," Dkt. No. 22.)  On May 11, 2018, Defendant filed the two instant motions.  Plaintiffs allege Defendant engaged in a pattern or practice of discrimination based on familial status and disability.  (FAC ¶¶ 2–3.)  Specifically, Plaintiffs allege Defendant:

> Discriminat[ed] in the terms and privileges of a rental because of a person's familial status; ma[de] or caus[ed] to be made a notice or statement that indicat[ed] a preference or limitation of discrimination based on familial status; coerc[ed], intimidate[ed], threaten[ed] or interfere[ed] with any person in the exercise of, or on account of his/her having exercised or enjoyed, or on account of his/her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected under the FHAA; . . . [and] refused to grant a reasonable accommodation request by a disabled person.

(Id. ¶¶ 2–4.)

**A.   Discrimination based on Familial Status**

According to the FAC, on April 29, 2016, Plaintiff Robert Brown sent an email to Defendant's corporate office after he received an unsatisfactory response from the on-site manager regarding repair issues.  (Id. ¶ 16.)  On May 3, 2016, the on-site manager responded to Plaintiffs Robert Brown and Latasha Brown by stating they "should have never written anything like this," and "if you're trying to piss me off, yea good job, you did it," and "people that live here longer do not complain about their problems."  (Id. ¶ 17.)  Thereafter, Plaintiffs received multiple notices of lease violations and threats of eviction stating that their children, Plaintiffs Elijah and Esiah Brown, were outside unsupervised.  (Id. ¶ 18.)  On September 23, 2016, Plaintiffs Robert and Latasha Brown sent a second email which complained about the harassment

they endured, the lack of repairs, and the lease violations, but were told by management that their violations were legitimate. (Id. ¶¶ 19–20.) On April 6, 2017, all resident Plaintiffs were issued a notice stating that "all household members under the age of 18 must be supervised at all times by head of household or co-head of household." (Id. ¶ 21.) On April 12, 2017, Plaintiffs Robert and Latasha Brown received another notice of violation which informed them that Esiah Brown was seen by management unsupervised in the common areas. (Id. ¶ 22.)

Plaintiffs Arnice Mingo and Ewin Gaines made repeated requests for repairs which went unaddressed. (Id. ¶ 23.) On or about April 30, 2017, the household of Plaintiffs Mingo and Gaines received a lease violation which stated their son, Plaintiff Sire, was seen by management unsupervised in the common areas. (Id. ¶ 24.) When Plaintiff Arnice Mingo spoke to the on-site managers about the violation, she informed them she was going to talk to someone about her legal rights regarding her children and the condition of her apartment. (Id. ¶ 25.) On May 10, 2017, as a response to the meeting, management sent a "cease and desist" letter. (Id. ¶ 26.) Additionally, when there was occasion for management to go into the home of Plaintiffs Mingo and Gaines, the on-site manager would request an armed police escort to accompany her. (Id. ¶ 27.)

### B. Discrimination Based on Disability

Plaintiff Roberta Lee Robbins is an 82-year-old tenant who suffers from macular degeneration, is legally blind, and physically-disabled. (Id. ¶ 30.) In September 2016, when Plaintiff Robbins moved in, she explained to the on-site manager, Sandy, that she needed a parking space close to her apartment because her frail health made it difficult to walk. (Id. ¶ 31.) Over the next year and a half, Plaintiff Robbins made repeated requests for a parking space near her home. (Id. ¶ 32.) After Plaintiff Robbins learned Sandy had three spaces for her personal use close to Plaintiff Robbins's apartment, she asked Sandy to trade one parking space with her. (Id.) Sandy refused. (Id.) On March 29, 2017, Plaintiff Robbins's granddaughter pulled into the space closest to Plaintiff Robbins's apartment in order to let Plaintiff Robbins out and walk her in. (Id. ¶ 34.) As the granddaughter pulled in, another person in the car behind her laid on the horn. (Id.) The granddaughter then backed out and pulled into a space next to the one she was initially in. (Id.) Sandy, the other driver, then yelled at the granddaughter and told her that all of the spaces in front of Plaintiff Robbins's apartment were hers. (Id.) The granddaughter had to park across the street to walk Plaintiff Robbins home. (Id.) Plaintiff Robbins went to the FHC to learn about her rights as a disabled tenant. (Id. ¶ 35.) Sandy gave Plaintiff Robbins a form for her doctor to complete so Plaintiff Robbins could obtain a reasonable accommodation. (Id.) After her doctor completed the form, Plaintiff Robbins returned it to Sandy. (Id.) Sandy stated anyone could have completed the form and she would have to get corporate to approve it. (Id.) Plaintiff Robbins has heard nothing further about her request for reasonable accommodation. (Id.)

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B.  Motion to Strike

Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The function of a motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted).  In order to determine whether to grant a motion to strike under Rule 12(f), the Court must determine whether the matter the moving party seeks to have stricken is: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973–74.

## III.  DISCUSSION

### A.  The FHAA and FEHA

#### 1.  Sufficiency of the Factual Allegations

Defendant argues Plaintiffs have failed to state plausible claims for relief under the FHAA and FEHA (collectively, the "Fair Housing Acts").  The Court, in its March Order, stated Plaintiffs:

> [I]nitially provide a factual background, [but] fail to fully set forth facts which are relevant to each particular claim, choosing instead to vaguely incorporate by reference the entire Complaint.  Moreover, each claim references several different statutes which regulate a variety of conduct.  Consequently, it is not clear whether facts which would apply to one statute referenced in a claim should also apply to another statute referenced in the same claim.

(MTD at 5 (citing March Order at 4).)  Defendant notes Plaintiffs now cite generally to the FHAA and the FEHA in Claim 1 and Claim 2 instead of identifying particular sections of the statutes.  (Id. at 5.)  By this general citation, Defendant contends Plaintiffs assert violations which are not supported by the alleged facts in this case, and it is unable to determine which facts are applicable to which claim.  (Id. at 6.)  The Court is unmoved by Defendant's concerns.  Plaintiffs set forth the specific FHAA statutes under which they bring suit.  (FAC ¶ 43.)  Additionally, Plaintiffs state Claim 2 is brought pursuant to § 12927 and § 12955 of the FEHA.  (Id. ¶ 54.)  The FAC as a whole makes it clear the crux of Plaintiffs' allegations center around familial and disability discrimination, and the reference to § 12955 of the FEHA sufficiently places Defendant on notice of the bases of the state law claims.  Defendant's concern that Plaintiffs seek to bring an untold number of irrelevant claims is unavailing.

#### 2.  Pattern or Practice

As a part of their Fair Housing Acts allegations, Plaintiffs state Defendant engaged in a "pattern or practice" of discrimination which constitutes a "continuing violation."  (Id. ¶¶ 2–3, 13.)  Defendant argues this allegation is not supported by any allegations in the FAC.  (MTD at 6–7.)  To establish a pattern or practice of discrimination, Plaintiffs must plead that discrimination was Defendant's standard operating procedure.  Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977).  To prove continued violations, the alleged facts must demonstrate "more than the mere occurrence of isolated or accidental sporadic discriminatory acts."  Obrey v. Johnson, 400 F.3d 691, 694 (9th Cir. 2005) (quoting Teamsters, 431 U.S. at 336).  Plaintiffs state in their opposition that Defendant continues to enforce discriminatory housing practices against families with children (Opposition at 12–13), however they fail to point to a section of the FAC which addresses Defendant's alleged continued discrimination.  Defendants argue this is insufficient to maintain a claim for a pattern and practice of discriminatory conduct.  (Reply at 2.)  The Court agrees.  Thus, to the extent Plaintiffs seek to maintain an action for a

pattern or practice of family or disability discrimination, Defendant's MTD is GRANTED and that claim is DISMISSED WITH LEAVE TO AMEND.

### B. Familial Status Discrimination

#### 1. Standing

Defendant argues Plaintiffs lack standing to bring a claim for discrimination based on familial status because they are not an aggrieved party. (MTD at 9.) Under 42 U.S.C. § 3602(k):

> "Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with – (1) a parent or person having a legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

Standing under the FHAA is broad. Pack v. Fort Washington II, 689 F. Supp. 2d 1237, 1242 n.1. (E.D. Cal. 2009). The FHAA defines an "aggrieved person" as anyone who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. 3602(i). A "discriminatory housing practice" means an act that is unlawful under §§ 3604, 3605, 3606, or 3617 of the FHAA. 42 U.S.C. § 3602(f). Defendant argues only the minor members of the Browns' and Mingo/Gaines' households have standing to bring a family status claim. (MTD at 9.) Defendant argues its policy is not directed to adults and Plaintiffs have not alleged facts which show they believe they will be injured by a forthcoming discriminatory practice. (MTD at 9–10.) The Court disagrees.

Here, the minor children of Plaintiffs Mingo/Gaines and Brown are also named Plaintiffs. Additionally, the FHA "was implemented to protect families with children from discrimination, not just the children as individuals." Blackington v. Quiogue Family Tr., No. 11-CV-1670 W WVG, 2013 WL 1701883, at *3 (S.D. Cal. Apr. 18, 2013). In Blackington, the plaintiffs did not name their minor children as plaintiffs, yet the court still found the plaintiffs had standing under the FHAA because there was "no dispute that the Blackingtons are a family with children" and the defendants could not "present any legal authority that affirmatively requires the Blackington's to name their children as plaintiffs." Id.[2] Accordingly, Defendant's MTD argument regarding Plaintiffs' standing to bring a familial status discrimination claim is DENIED.

#### 2. Plaintiffs State a Plausible Claim for Relief

Defendant argues Plaintiffs fail to cite any authority which states how and why it is unlawful to require children to be supervised by adults or the head of household. (MTD at 8.)

---

[2] Defendant also argues Plaintiffs' FAC contains contradictory allegations. (MTD at 10.) Upon review, the Court finds this argument without merit.

Pursuant to the FHAA § 3604(b) ("§ 3604(b)"), it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status . . . ." To state a claim under § 3604(b), Plaintiffs must show they were subjected to different "terms, conditions, or privileges because of a protected status." Inland Mediation Bd. of Cty. Of Pomona, 158 F. Supp. 2d 1120, 1148 (C.D. Cal. 2001). A plaintiff may proceed under §3604(b) under either disparate impact or disparate treatment, or both. Budnick v. Town of Carefree, 518 F.3d 1109 (9th Cir. 2008).

Plaintiffs cite authority which they maintain establish that a rule which requires children to be supervised by adults while outside is unlawful. (Opposition at 13.) For example, in Pack, the court held a rule which mandated all children under ten be supervised by an adult while outside violates § 3604(b). 689 F. Supp. 2d at 1243–44. There, the court stated the defendant had not provided a sufficient justification for this manner of restriction upon children as old as ten. Id. Finding that rule overbroad and unduly restrictive, the court noted that a child of ten "could not read a book steps away from his front door." Id. at 1244. Here, the policy dictates that all children under eighteen must be under adult supervision (FAC ¶¶ 21, 24), which manifests significantly greater restriction than in Pack. The Pack court allowed the defendant an opportunity to justify the restriction, and subsequently found the justification unreasonable. 689 F. Supp. 2d at 1243–44. However, that case was at the summary judgment stage. Here, Plaintiffs must merely allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. They have done so. Notably, Defendant does not attempt to counter Plaintiffs' response in its MTD Reply.

### C. Disability Discrimination

Defendant argues Plaintiff Robbins has not stated sufficient facts to allege a claim for "refusal to make reasonable accommodations" under 42 U.S.C. § 3604(f)(3)(B). (MTD at 10–11.) Defendant contends that requiring Plaintiff Robbins to fill out a form to obtain a parking spot is not discriminatory, but is necessary in the orderly operations of a multi-family housing complex. (Id. at 10.) Additionally, Defendant argues Plaintiff Robbins never requested a reasonable accommodation as the FAC alleges Plaintiff Robbins does not drive and, consequently, would not need her own parking space to just get dropped off by family members. (Id. at 11 (citing FAC ¶ 31).) Finally, Defendant contends Plaintiff Robbins fails to state facts showing she qualifies as a disabled person under federal and state fair housing laws. (Id. at 12.)

Defendant's third argument is without merit. To be handicapped, a person must have a physical or mental impairment which substantially limits one or more major life activities. 24 C.F.R. § 101.201. Blindness constitutes a handicap. See Goldman v. Standard Ins. Co., 341 F.3d 1023, 1030 (9th Cir. 2003); Heifetz v. Breed Properties, No. C 16-1490 CRB, 2017 WL 713303, at *3 n.3 (N.D. Cal. Feb. 23, 2017). Plaintiffs' FAC states Plaintiff Robbins suffers from macular degeneration, is legally blind, and has been issued a disabled parking placard by the State of California. (FAC ¶ 30.) Taken as true, these facts sufficiently establish Plaintiff Robbins qualifies as a disabled person.

Plaintiffs argue Plaintiff Robbins's repeated requests for a parking space closer to apartment qualifies as a reasonable accommodation under the FHAA. (MTD Opposition at 17.) To state a prima facie case for discrimination, a party must establish (1) she has a disability as defined by the FHAA; (2) the housing provider knew or reasonably should have known of the plaintiff's disability; (3) accommodation of the disability "may be necessary" to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the housing provider refused to make such accommodation. Giebeler v. M & B Associates, 343 F.3d 1143, 1146–47 (9th Cir. 2003). An accommodation is reasonable where it would not require a fundamental alteration in the nature of the housing provider's business or impose on the landlord undue financial or administrative hardship. Id. at 1157. A plaintiff "need not use the magic words of reasonable accommodation or the Fair Housing Act to trigger a defendant's duty to provide an accommodation so long as the plaintiff's request contains sufficient information to place a defendant on notice that the request is one for a reasonable accommodation." Elliott v. QF Circa 37, LLC, No. 16-CV-0288-BAS-AGS, 2018 WL 2933467, at *7 (S.D. Cal. June 12, 2018) (internal quotations omitted). As to the "may be necessary" standard, the Ninth Circuit has interpreted it to mean that a "plaintiff must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." United States v. California Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997). There must be a causal link between the defendant's policy and the plaintiff's injury. Id.; see also Castellano v. Access Premier Realty, Inc., 181 F. Supp. 3d 798, 805 (E.D. Cal. 2016) ("accommodation is necessary when there is evidence showing that the desired accommodation will affirmatively enhance a disabled person's quality of life by ameliorating the effects of the disability").

Here, Plaintiff Robbins states she is 82-years-old, legally blind, suffers from macular degeneration, and has been issued a disabled parking placard by the State of California. (FAC ¶ 30.) Plaintiffs state it is difficult for Plaintiff Robbins to walk due to her blindness and her frail health. While Plaintiff Robbins does not drive, her family members pick her up and take her where she needs to go. (Id. ¶ 31.) There is a "considerable distance" between Plaintiff Robbins's assigned parking space and her home, and the terrain is "bumpy and unsafe," "uneven and unpaved." (Id. ¶¶ 31, 33.) Plaintiff Robbins made repeated requests for a parking space near her home. (Id. ¶ 32.) Defendant argues Plaintiff Robbins failed to demonstrate the parking space was "necessary" as defined by the FHAA. (MTD Reply at 8.) Specifically, Defendant argues Plaintiff Robbins admittedly does not drive, and the FAC at one point characterizes her parking space as being "several feet" from her apartment. (Id. (citing FAC ¶ 33.) Although it is a close call, Plaintiffs have sufficiently set forth facts which demonstrate the accommodation would "affirmatively enhance [Plaintiff Robbins's] quality of life by ameliorating the effects of the disability." Castellano, 181 F. Supp 3d at 805. Plaintiff Robbins's advanced age and legal blindness make walking across bumpy terrain difficult and potentially unsafe. Possessing a parking spot closer to her apartment would directly increase her quality of life by granting her ease of access to her dwelling. Additionally, this would prevent a situation where Plaintiff Robbins's family member must leave the car parked and unattended in the street while

walking Plaintiff Robbins to her apartment.  As a result, Plaintiffs have alleged sufficient facts for Plaintiff Robbins to state a claim for relief under the FHAA.[3]

**D.  The FHC**

Defendant argues the FHC has not alleged sufficient facts demonstrating it has standing to bring any of the stated claims.  (MTD at 13.)  An organization has "direct standing to sue [when] it showed a drain on its resources from both a diversion of its resources and frustration of its mission."  Fair Hous. of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002).  However, "standing must be established independent of the lawsuit filed by the plaintiff."  Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 943 (9th Cir. 2011).  An organization "cannot manufacture [an] injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all."  La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010).  A set back to the organization's abstract social interest without a discussion of resources would not be sufficient to constitute standing.  Serv. Women's Action Network v. Mattis, No. 12-CV-06005-EMC, 2018 WL 2021220, at *14 (N.D. Cal. May 1, 2018).

Two cases illustrate the law regarding organizational standing.  In Fair Housing Council of San Fenrando Valley v. Roommate.com, LLC, the Fair Housing Councils ("FHCs") of two cities sued Roommate.com, "alleging that the website's questions requiring disclosure of sex, sexual orientation and familial status, and its sorting, steering and matching of users based on those characteristics violate[d] the Fair Housing Act and the California Fair Employment and Housing Act."  666 F.3d 1216, 1218 (9th Cir. 2012).  In ruling the FHCs had standing to sue, the Ninth Circuit explained:

> Prior to commencing litigation, the FHCs investigated Roommate's alleged violations and, in response, started new education and outreach campaigns targeted at discriminatory roommate advertising.  The resources spent on those campaigns were not associated with litigation.  Because Roommate's conduct caused the FHCs to divert resources independent of litigation costs and frustrated their central mission, we conclude that the FHCs have organizational standing.

Id. at 1219.

In Mattis, the Service Women's Action Network ("SWAN") alleged the Department of Defenses' ("DoD") polices regarding the placement of women in combat positions

---

[3] In its MTD Reply, Defendant argues that, to the extent Plaintiff Robbins makes a claim for retaliation, that claim should be dismissed for failure to state a plausible claim.  (MTD Reply at 9.)  However, as this argument was not made in the original MTD, the Court declines to consider it.  See City of Los Angeles v. San Pedro Boat Works, No. CV 02-7986 ABC (JWJX), 2004 WL 7325052, at *2 n.3 (C.D. Cal. Mar. 22, 2004) ("Because a movant may not raise new arguments in a reply brief, the Court declines to consider this argument.").

unconstitutionally discriminated based on sex. 2018 WL 2021220, at *1 (N.D. Cal. May 1, 2018). In finding SWAN lacked standing to sue, the court noted:

> In the instant case, whether the challenged policies of the DoD constitutes more than a setback to SWAN's abstract social interest is not clearly stated. While SWAN . . . alleges it has had to divert resources to address the inequities and harms caused by the allegedly unconstitutional DoD policies, the allegations are conclusory. SWAN does not provide any specificity in describing (1) from what and (2) to what its resources have been reallocated.

Id. at * 14.

Here, the FHC alleges it received a complaint concerning Defendant's alleged conduct, and it "investigated the complaints by visiting the subject property and surveying tenants and conducting outreach and education at or near the subject property." (FAC ¶ 42.) The facts alleged here mirror those proffered in Mattis, where SWAN alleged that it "fields complaints and has responded to reports of disadvantages faced by service women as a result of the policies, but it does not allege e.g., that it has had to devote more resources to providing . . . counseling and assistance . . . Indeed, the complaint does not clearly allege whether SWAN typically takes any action or provides services beyond fielding complaints." Mattis, 2018 WL 2021220, at * 14. Notably, as in Roommate.com, the FHC alleges that it conducted "outreach and education at or near the subject property," but it does not discuss how these activities diverted resources or where those resources were originally allocated. See National Council of La Raza v. Cegavske, 800 F.3d 1032. 1039–40 (9th Cir. 2015) ("All three plaintiffs allege[d] that Nevada's failure to comply with [the statute] caused them to expend additional resources, and that but for the State's failure they would have spent these resources to accomplish other aspects of their organizational missions, such as voter education and registering voters . . . The complaint clearly alleges that plaintiffs changed their behavior as a result of Nevada's alleged violation"). Plaintiffs cite S. Cal. Hous. Rights Ctr. v. Krug for support; however, the organization in that case submitted significantly more factual details concerning their activities than what was proffered here. 564 F. Supp. 2d 1138, 1146–48 (C.D. Cal. 2007) (noting the Housing Rights Center submitted facts detailing exactly how much money they lost, including the hourly salaries of staff members, the costs associated with on-site testing, and the stipends given to testers, among other costs). Thus, the Court holds the FHC has failed to sufficiently establish standing. The Court GRANTS Defendant's MTD and DISMISSES FHC's claims WITH LEAVE TO AMEND.

**E. Breach of Warranty of Habitability**

Defendant argues Plaintiffs' claim for breach of warranty of habitability should be dismissed because the FAC does not state when, if at all, the alleged deficiencies were reported, how long it took for Defendant to respond, or if there was absence of good cause for the delay. (MTD at 17–18.) Defendant argues Plaintiffs only allege generally that they sent Defendant repair requests, and do not connect those general repair requests with the alleged habitability violations. (Id. at 18.) The elements of an affirmative claim for breach of warranty of habitability

are as follows: (1) the existence of a material defective condition affecting the premises' habitability, (2) notice to the landlord of the condition within a reasonable time after the tenant's discovery of the condition, (3) the landlord was given a reasonable time to correct the deficiency, and (4) resulting damages. See Quevedo v. Braga, 72 Cal. App. 3d Supp. 1, 7–8 (1977). Additionally, there is a statutory cause of action available to the residential tenant under Cal. Civ. Code § 1942.4. Pursuant to that statute, a tenant must show (1) the dwelling was untenantable, was in violation of Health and Safety Code § 17920.10, or was deemed substandard under Health and Safety Code § 17920.3; (2) a public officer inspected the premises and gave the landlord notice that it must abate the nuisance or repair the property; (3) the conditions were not remedied within thirty-five days of the notice; and (4) the substandard conditions were not caused by the tenant's acts or omissions. Erlach v. Sierra Asset Servicing, LLC, 226 Cal. App. 4th 1281, 1298 (2014). Considering these standards, Defendant argues Plaintiffs' allegations do not sufficiently support a claim for breach of warranty of habitability. (MTD Reply at 14–15.)

Upon review of the FAC, the Court agrees with Defendant. While Plaintiffs generally allege they "repeatedly made repair requests that went unfulfilled" (FAC ¶¶ 15, 23), they fail to connect these general statements about repair to the facts grounding their claim for breach. Additionally, they fail to allege notice to the landlord was given within a reasonable time after the tenant's discovery of the condition, or how long it took for management to respond. Plaintiffs' FAC lacks key factual details necessary to state a claim for breach of warranty of habitability. In their MTD Opposition, Plaintiffs seem to acknowledge that factual details are missing, and state the FAC adequately states a claim for breach of the warranty of habitability, and "[w]hile the Defendant may want to learn more, [it] can do so through discovery." (MTD Opposition at 20.) However, Plaintiffs must first allege sufficient facts which meet the elements for this claim. They have not done so. Accordingly, Defendant's MTD is GRANTED and this claim is DISMISSED WITH LEAVE TO AMEND.

### F. Negligence

Defendant argues Plaintiffs fail to state a claim for negligence because there are no facts alleged which demonstrate it engaged in discriminatory conduct or breach the warranty of habitability. (MTD at 18.) While the Court found Plaintiffs sufficiently stated claims for familial and disability discrimination, it is unclear from the FAC upon which facts Plaintiffs state their claim for negligence. According to the FAC, Defendant's negligent acts include:

(a) Defendant's negligent failure to supervise itself regarding compliance with the requirements of federal and state fair housing laws;
(b) Defendant's negligent failure to supervise agents and employees regarding compliance with the requirements of federal and state fair housing laws; and
(c) Defendant's negligent failure to operate and maintain the subject property in conformity with accepted industry custom and standards.

(FAC ¶ 57.) Defendant contends there is confusion as to how exactly Plaintiffs claim Defendant was negligent. The Court agrees. As stated, this claim merely contains legal conclusions without

sufficient supporting facts. As a result, it is difficult to determine the precise manner Plaintiffs allege Defendant acted negligently. Additionally, it is unclear whether the claim for negligence references all of Plaintiffs' prior claims or a select few of them. Accordingly, the Court finds Plaintiffs have not sufficiently stated a claim for negligence, and thus Defendant's MTD is GRANTED and this claim is DISMISSED WITH LEAVE TO AMEND.

### G. Punitive Damages

Plaintiffs seek punitive damages pursuant to 42 U.S.C. § 3613(c)(1). (Id. ¶¶ 7, 48.) Plaintiffs state Defendant's "unlawful rental practices, as described above, were wanton, willful, malicious, fraudulent, and/or oppressive; were intended to cause injury; and/or were done in conscious, callous, reckless, or deliberate disregard for the Plaintiff's federally protected rights." (Id. ¶ 48.) Defendant argues this allegation is conclusory and does not support a factual basis for punitive damages. (MTD at 19.) The Court agrees. In order to bring a claim for punitive damages, Plaintiffs need to demonstrate Defendant showed reckless or callous indifference. The Fair Hous. Council of San Diego, Joann Reed v. Penasquitos Casablanca Owner's Ass'n, 381 F. App'x 674, 677 (9th Cir. 2010). "A finding of reckless indifference ultimately focuses on the actor's state of mind and requires that the defendant at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Id. (internal quotations omitted). Here, it is unclear upon which facts Plaintiffs base their claim for punitive damages. Plaintiffs allege generally that Defendant's "unlawful rental practices" were "callous" and "reckless," but do not distinctly state to which practices this refers. (FAC ¶ 48.) The result is a vague claim. To assert a claim for punitive damages, Plaintiffs should specifically and clearly allege salient facts. These facts should manifest callousness and reckless indifference. The FAC fails to do so. Accordingly, the Defendant's MTD is GRANTED and this claim is DISMISSED WITH LEAVE TO AMEND.

## IV. LEAVE TO AMEND

If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). Given the nature of Plaintiffs' FAC, Plaintiffs have LEAVE TO AMEND all dismissed claims. If Plaintiffs choose to amend, they are cautioned to address all of the Court's concerns in their Second Amended Complaint. The Second Amended Complaint must be filed, if at all, by August 17, 2018.

## V. CONCLUSION

The Court GRANTS-IN-PART and DENIES-IN-PART Defendant's MTD. Additionally, upon review of Defendant's MTS, the Court finds the arguments within it are

either plainly frivolous,[4] or mooted based on the Court's rulings above.  Accordingly, Defendant's MTS is DENIED and, as a result, Defendant's RJN is DENIED as MOOT.

**IT IS SO ORDERED.**

---

[4] This is the second Motion to Strike brought by Defendant.  Regarding Defendant's first Motion to Strike (Dkt. No. 10), the Court, in its March Order, stated the following:

> The Court will not extensively address the merits of the Motion to Strike.  However, it is clear from a cursory review that it borders on being frivolous.  In it, Defendant does not even attempt to meet the clearly established Rule 12(f) standard for striking Plaintiffs' Complaint, or any portion of it.  Defendant is cautioned to refrain from filing motions of dubious merit.  Failure to do so will result in sanctions.

(March Order at 5 n.2.)  Here again, portions of Defendant's MTS border on the frivolous. Defendant argues Plaintiffs' FAC is internally contradictory (MTS at 3–4), and Defendant characterizes Plaintiffs' FAC as stating that Plaintiff Robbins no longer resides at the subject property (id. at 6).  These arguments are plainly meritless and could be construed as patently disregarding the warning contained within the Court's March Order.  These two instances, in conjunction with Defendant's disregard for the Court's page limitation for replies as outlined in the Court's Standing Order, display, at best, a complete lack of diligence concerning the Court's expectations for the conduct of counsel before it.  Moreover, Defendant's already manifested lack of concern for the Court's orders make Plaintiffs' accusations of misconduct concerning the meet and confer mandated by Local Rule 7-3 especially troublesome.  (See MTD Opposition at 7–8, 10.)

Defendant is warned, for the last time, to refrain from making motions and arguments which are of dubious merit and to strictly abide by all rules contained in the Local Rules and the Court's Standing Order.  Any future violations will result in sanctions.